# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTOPHER JOZEFYK,**

        **Plaintiff,**

        v.                                                                                         Case No. 19-CV-1606

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

## DECISION AND ORDER

### 1. Introduction

This is the second time that Christopher Jozefyk is before this court alleging that the Commissioner erred in concluding that he was not disabled. On March 5, 2018, then-Chief Judge William C. Griesbach affirmed the final decision of the Commissioner. *Jozefyk v. Berryhill*, No. 16-C-1361, 2018 U.S. Dist. LEXIS 34969 (E.D. Wis. Mar. 5, 2018). Jozefyk appealed, and on May 8, 2019, the Court of Appeals affirmed. *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019).

While those prior proceedings were ongoing, Jozefyk filed a new application for disability insurance benefits and supplemental security income. His claims were denied

initially on March 15, 2017 (Tr. 150-51) and on reconsideration on August 15, 2017 (Tr. 152-53). A hearing was held before an administrative law judge (ALJ) on October 30, 2018. (Tr. 40-117.) In a decision dated January 10, 2019, the ALJ concluded that Jozefyk was not disabled. (Tr. 16-32.) After the Appeals Council denied Jozefyk's request for review on September 4, 2019 (Tr. 1-3), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 10), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since his amended alleged onset date" of May 16, 2015. (Tr. 16, 19.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Jozefyk has the following severe impairments: "degenerative disc disease; obstructive sleep apnea; diabetes; obesity; headaches; affective disorder; generalized anxiety disorder with post-

2
Case 1:19-cv-01606-WED   Filed 10/02/20   Page 2 of 20   Document 23

traumatic stress disorder; attention deficit hyperactivity disorder; and a personality and impulse control disorder." (Tr. 19.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments …." (Tr. 20.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Jozefyk has the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant is further limited to frequent bilateral reaching and handling. He must avoid all use of moving machinery and exposure to unprotected heights. Mentally, the claimant is limited to understanding, remembering, and carrying out no more than simple instructions. He is further limited to employment in a low stress job defined as having only occasional decision making and changes in the work setting. The claimant is also limited to work where there is no production rate or pace work such as an assembly line. He can have only occasional contact with the public, co-workers, and supervisors.

(Tr. 23.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 31.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 31.) For example, based on the testimony of a vocational expert, the ALJ concluded that Jozefyk could work as a "mail clerk, (DOT 209.687-026, light, unskilled, 100,000 jobs nationally), routing clerk, (DOT 222.687-022, light, unskilled, 100,000 jobs nationally), and

housekeeping cleaner, (DOT 323.687-014, light, unskilled, 250,000 jobs nationally)." (Tr. 32.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Listing 11.02

Jozefyk argues that the ALJ erred in his assessment of whether Jozefyk's migraines are of a severity to medically equal listing 11.02. (ECF No. 16 at 8-11.) Although listing 11.02 discusses epilepsy, because there is no listing for migraines the Commissioner routinely applies listing 11.02 when a claimant suffers from migraines. *See Snow v. Berryhill*, No. 3:18-CV-434 JD, 2019 U.S. Dist. LEXIS 71368, at *9 (N.D. Ind. Apr. 26, 2019); *see also, e.g., Pawlowicz v. Saul*, No. 19-cv-537-bbc, 2020 U.S. Dist. LEXIS 124551, at *14 (W.D. Wis. July 14, 2020); *Melissa G. v. Saul*, No. 18 CV 50218, 2019 U.S. Dist. LEXIS 156606, at *27 (N.D. Ill. Sep. 13, 2019); *Kinnari A. v. Saul*, No. 19 C 760, 2020 U.S. Dist. LEXIS 65005, at *23 (N.D. Ill. Apr. 14, 2020).

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ stated:

> The undersigned considered the claimant's migraines under listing 11.02. Although this listing addresses epilepsy, it is the most closely analogous listed impairment. The claimant's impairment does not meet the severity requirements of listing 11.02B or D, as there is no evidence of migraines occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and with a marked limitation in one of the following: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. In this case, the claimant has no more than a moderate

limitation in any of the paragraph B four broad areas of functioning as discussed below.

(Tr. 20-21.)

Jozefyk has not pointed to evidence that the ALJ's conclusion was inaccurate. There is no evidence that Jozefyk suffered *migraines* at the required frequency. Rather, Jozefyk alleges he suffered *headaches* at the required frequency. He points to evidence that in 2017 he reported "two severe HA per week and daily HAs" and later reported "2-3 moderate HA per month, and then daily HAs." (ECF No. 16 at 9.) He contends that "[t]his is an entire line of evidence supporting daily HAs, severe HAs occurring at least a couple of times per month and migraines triggered by both light and smell …." (ECF No. 16 at 9-10.)

Jozefyk's argument conflates migraines with headaches. Although a migraine is commonly referred to as a type of headache, it cannot be said that all headaches constitute migraines. Thus, a person cannot be said to medically equal listing 11.02 merely because he suffers headaches at least once a week for three months despite treatment. Only if a person suffers headaches at that frequency *and* those headaches produce symptoms that are medically equivalent to that which attend dyscognitive seizures will a finding of medical equivalence be appropriate. *See Cooper v. Berryhill*, 244 F. Supp. 3d 824, 829 (S.D. Ind. 2017).

This is not mere semantics. The record demonstrates that the severity of Jozefyk's headaches varied significantly. And while he reported migraines, he fails to present

evidence that those migraines occurred at the requisite frequency. (*See, e.g.*, ECF No. 16 at 11 (discussing "frequent migraines" and headaches affecting "his ability to do routine activities several times per week").) In reply, Jozefyk asserts, "despite treatment, he had migraines occurring weekly and headaches occurring daily." (ECF No. 22 at 2.) However, that assertion is unsupported by any citation to the record.

Thus, Jozefyk has failed to show that he suffered headaches of a frequency *and severity* that were medically equivalent to listing 11.02. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). In the absence of any such evidence, any error by the state agency consultants was necessarily harmless.

### 4.2. ALJ's Residual Functional Capacity Analysis

#### 4.2.1. Migraines

Jozefyk asserts that the ALJ failed to adequately explain how limiting him to no exposure to hazards accounts for his migraines. (ECF No. 16 at 12.) Amidst this argument Jozefyk offers myriad criticisms of the ALJ's decision—whether the treatment Jozefyk received could be fairly described as "generally limited"; whether depression was the cause of his headaches; why Jozefyk didn't obtain Botox treatment; whether Jozefyk reported "improvement"; and whether certain treatment notes provide a reason for discounting Jozefyk's symptoms.

But Jozefyk never connects these criticisms to the ALJ's RFC finding. In other words, he never explains how, for example, the ALJ's alleged failure to consider the

8
Case 1:19-cv-01606-WED   Filed 10/02/20   Page 8 of 20   Document 23

reasons why Jozefyk refused Botox treatment suggests that the ALJ erred by finding that no exposure to hazards adequately accounts for the limitations resulting from his migraines.

The only substantive challenge Jozefyk offers to the ALJ's RFC finding is when he notes that there was evidence that he needed to lie down in a dark room when he suffered a migraine (and otherwise suffered sensitivity to sound and light when experiencing a migraine), and in one instance a headache was triggered by a smell. (ECF No. 16 at 14.) The implication is that the ALJ should have accounted for these limitations in his RFC. But Jozefyk does not develop this argument.

Jozefyk has not demonstrated that the ALJ erred in his RFC finding with respect to Jozefyk's migraines.

#### 4.2.2. Edema and Leg Elevation

Jozefyk argues that the ALJ ignored evidence that he suffered from edema in his legs, for which he was prescribed compression stockings, and it was recommended that he elevate his feet when seated or laying down. He contends that this was inconsistent with the ALJ's finding that he was capable of light work, which requires standing or walking for six hours of an eight-hour workday. (ECF No. 16 at 15.)

In support of his contention that he was required to elevate his feet, Jozefyk cites records of two visits to medical providers. The first is from April 24, 2017, when Jozefyk saw a nurse practitioner primarily to have disability paperwork completed. (Tr. 857.)

Following a physical examination, the nurse practitioner noted under "Plan" that he should have lab work completed before his appointment the following month, noted that he completed the disability paperwork, and "Elevate feet, watch sodium intake." (Tr. 859.) The second record is from a March 14, 2018 office visit with a physician assistant where Jozefyk complained of swelling in his left ankle that began the preceding day. (Tr. 1011.) The physician assistant wrote, in part, under "Plan," "Wrote prescription for compression stockings 15mmHg to wear during day. Keep feet elevated when sitting/laying down. Encouraged weight loss and increasing exercise as this will improve circulation." (Tr. 1012.)

Jozefyk has not demonstrated that the swelling in his legs was inconsistent with light work. Nor does the cited evidence suggest that he would be required to elevate his legs during a workday. Rather, one medical provider recommended merely that, when he is sitting or laying down, he should elevate his legs. (*See also* Tr. 708-09 (noting edema and recommending that Jozefyk "elevate[] feet above heart at night").) The other provider offered provided no indication of how often or for how long Jozefyk should elevate his feet. Additionally, medical providers inconsistently recommended elevation of his legs, even when noting swelling in his legs. (*See, e.g.*, Tr. 854-55 (noting "[t]race bilateral lower extremity edema" but no recommendation for elevation); 861-64 (same).) There is no evidence that any recommendation to elevate his legs continued after he was prescribed compression stockings.

Thus, the ALJ did not err in his RFC finding by failing to consider Jozefyk's leg edema or these two recommendations that he elevate his legs.

**4.3. Treating Source Opinion Evidence**

Jozefyk argues that the ALJ erred when he afforded little weight to the opinions of Dr. Katherine Liao and Dr. Paul Hayes, both of whom are physicians who treated Jozefyk.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) "In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (quoting *Elder*, 529 F.3d at 415). Ultimately, "[a]n ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016).

**4.3.1. Dr. Hayes**

Dr. Hayes concluded that Jozefyk would be able to sit for only about two hours per day and could stand or walk for less than two hours per day. (Tr. 824.) Nonetheless, he concluded that Jozefyk would be capable of working up to six hours per day for a total of 30 hours per week. (Tr. 823.)

The ALJ discounted this opinion in part because Dr. Hayes hedged his opinion. At the end of his evaluation Dr. Hayes wrote, "Pt. will need to have functional capacity at PT dept to get these tests evaluated. These are based on quick evaluation within my office visit[.] [A] functional capacity test by physical therapy would provide a more accurate evaluation." (Tr. 824.)

Given Dr. Hayes's own caveat to his opinion, it was reasonable for the ALJ to afford his opinion little weight. But the ALJ offered additional reasons for discounting Dr. Hayes's opinion, including that Dr. Hayes's examination failed to document any musculoskeletal or mental abnormalities, and Jozefyk's treatment was "conservative[,] … consisting primarily of chiropractic care and medication management for the claimant's mental symptoms." (Tr. 29.)

Jozefyk has not shown that these conclusions were incorrect. Rather, he argues that the ALJ erred in his assessment of Dr. Hayes's opinion because the ALJ did not discuss "the recommendations Dr. Hayes provided due to edema …." (ECF No. 16 at 17.) But, as noted above, Jozefyk's contention that his edema required him to elevate his legs during the workday is not supported by the record. Thus, the ALJ complied with his obligation to provide good reasons for the weight he afforded Dr. Hayes's opinion.

### 4.3.2. Dr. Liao

Dr. Liao submitted a form wherein she stated that Jozefyk could sit for up to two hours and stand or walk for up to an hour before needing to change positions. (Tr. 833.)

She also stated that he could frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never left 50 pounds. (Tr. 834.) Moreover, he could rarely twist, stoop, crouch, or climb stairs, and could never climb ladders. (Tr. 834.)

The ALJ afforded Dr. Liao's opinion little weight, explaining:

> The undersigned recognizes that Dr. Liao is a treating provider and as argued by the claimant her opinion would ordinarily be afforded greater weight. However, Dr. Liao's opinion appears to be primarily based on the claimant's subjective complaints. Dr. Liao provided a written explanation stating that the claimant would require a functional capacity evaluation. She said that her lifting restriction was "per patient's account." Dr. Liao further indicated that the majority of the other limitations were also "per patient's account." Additionally, Dr. Liao declined to fill out large sections of this check the box opinion form. The undersigned further assigns this opinion little weight because the opinion is inconsistent with the claimant's treatment record and some of the claimant's allegations. For example, although this opinion indicated that the claimant could lift only 10 pounds occasionally and less than that frequently, on one function report, the claimant said that he could lift up to 30 pounds. (Ex. B11E). The claimant also had generally conservative treatment for his degenerative disc disease. He declined Botox treatment for his headaches. Many physical examinations failed to document abnormalities with some physical examinations showing tenderness or reduced range of motion in the claimant's spine. Overall, these treatment records are inconsistent with this opinion, which is primarily based on the claimant's reports to this provider in April 2017.

(Tr. 29.)

Jozefyk argues that the ALJ erred in affording Dr. Liao's opinion little weight because he did not consider reasons why Jozefyk may have declined Botox treatment, that the use of strong medication could support his subjective complaints, Jozefyk failed to complete physical therapy, and Dr. Liao's records documented abnormalities. (ECF

No. 16 at 17-18.) He also argues that the ALJ failed to address the length of Dr. Liao's treatment or the fact that she was a specialist in pain management. (ECF No. 16 at 18.)

Similar to Dr. Hayes, Dr. Liao hedged her opinion. Question 14 of the form asked, "As a result of your patient's impairments, estimate your patient's functional limitations if your patient were placed in a *competitive work situation:*" (Tr. 833 (emphasis in original).) Below Question 14 were 12 sub-questions, denominated "a" through "m" ("d" is missing). The response to eight of these sub-questions was "N/A." (Tr. 833-35.) The four questions that were answered address Jozefyk's abilities to sit, stand, lift, and engage in other activities. Above these sub-questions there is hand-written, presumably by Dr. Liao, "*per patients report." (Tr. 833.) The ALJ apparently understood this handwritten note to mean that the answers came from Jozefyk and were not Dr. Liao's opinion of his abilities based on Jozefyk's subjective reports, the objective evidence, and her medical expertise.

That was a reasonable understanding of the report. It does not appear that this was an instance in which the medical expert offered an opinion based wholly on the patient's subjective reports, which would be an appropriate basis for discounting the opinion. *See Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). Rather, it appears that, as to the specific abilities referenced in question 14, Dr. Liao did not offer any opinion. Instead, she deferred wholly to Jozefyk. (*See also* Tr. 836 (stating that she would need a functional capacity assessment to determine Jozefyk's abilities and she was instead noting Jozefyk's self-reported abilities).) In other words, Jozefyk might as well have filled out the form

14
Case 1:19-cv-01606-WED   Filed 10/02/20   Page 14 of 20   Document 23

himself. As such, notwithstanding the fact that they were included in a form that also contained opinions by a treating medical source, the statements in response to question 14 (Tr. 833-35) and the addendum (Tr. 836) were entitled to no greater weight than any other statement by Jozefyk.

It is unnecessary to address any alleged error in the additional reasons provided by the ALJ for discounting Dr. Liao's opinions. As the Commissioner notes, the arguments are undeveloped (ECF No. 19 at 10) and any error would be harmless. The court can predict with great confidence that, regardless of any error, the ALJ would have given Dr. Liao's report little weight based solely on the fact that the report reflected Jozefyk's self-reported limitations rather than a medical expert's opinion as to his limitations. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

### 4.4. Non-Treating Source Opinion Evidence

The ALJ assigned "some weight" to the opinions of the state agency psychological consultants, Mina Khorshidi (Tr. 118-33; 134-49) and Lisa Fitzpatrick (Tr. 154-72; 173-91), and William L. Camp, a psychologist who twice examined Jozefyk (Tr. 545-51; 880-89).

#### 4.4.1. State Agency Psychological Consultants

As to the state agency psychological consultants, Jozefyk states:

As rationale, the ALJ stated the ALJ [sic] did not fully consider treatment after the middle of 2017 and treatment records showed his condition was stable. (R. 30). Yet, the ALJ did not reconcile the fact that the Agency found that Jozefyk likely had moderate limitations in terms of responding to

others as evidenced by his fear of criticism and rejection. (R. 168). It is likely that one could encounter criticism by either coworkers or supervisors at times at a job, yet no hypothetical included this portion of the Agency opinion, nor did the ALJ explain why it was not included. (R. 168).

(ECF No. 16 at 18.)

It is unclear whether Jozefyk is alleging error in the weight the ALJ gave to the state agency psychological consultants' opinions or in the completeness of the hypotheticals the ALJ presented to the vocational expert. The former would appear more likely given the context of Jozefyk's argument (coming in the same section of his brief in which he challenged the weight given to treating source opinions), but the latter would seem more likely given the nature of his argument. In either event, the argument is undeveloped and Jozefyk has not demonstrated error.

### 4.4.2. Dr. Camp

As to Dr. Camp the ALJ stated:

Dr. Camp performed the first examination in 2013 and the second examination in 2017. After both of these examinations, Dr. Camp concluded that the claimant's prognosis "would be listed as somewhat mixed for the present, but hopefully improvable to some degree with [appropriate treatment]." These conclusions are not persuasive in determining the claimant's residual functional capacity, as the conclusions are not specific regarding the claimant's functional abilities and limitations. Although these conclusions are not particularly helpful, the undersigned finds the examinations persuasive. Dr. Camp performed cognitive testing during the most recent examination. This testing placed the claimant in the average to above average range. The claimant even tested in the 91st percentile in one area of this testing. During the earlier test, the claimant also demonstrated a very good memory. However, Dr. Camp further noted pressured speech, which is inconsistent with other mental status examinations throughout the claimant's treatment record. (Ex. B7F, pg. 23; Ex. B8F, pg. 4-5, 9-10; Ex. Bl2F,

> pg. 7; Ex. Bl4F, pg. 13; Ex. Bl6F, pg. 3-4; Ex. B27F, pg. 3, 6, 16, 7). Additionally, Dr. Camp appears to heavily rely on the claimant's subjective reports. Given these factors, the undersigned assigns these examinations some weight.

(Tr. 30.)

Again, the nature of Jozefyk's argument is unclear. He argues that the ALJ's reference to the fact that Jozefyk tested in the 91st percentile in one category ignores "the other extremes that visual delay was at 34% and working memory was only at 55%." (ECF No. 16 at 18.) He argues that this is contrary to the ALJ's finding that Jozefyk has a "very good memory." (ECF No. 16 (quoting Tr. 30).) He also argues that "the ALJ erroneously suggests that Dr. Camp 'appear[ed] to heavily rely on the claimant's subjective symptoms'." (ECF No. 16 at 19 (quoting Tr. 30).)

Jozefyk has not demonstrated that any alleged error was material. He does not show that the ALJ erroneously discounted (or should have further discounted) Dr. Camp's opinion, much less that any erroneous weight given to Dr. Camp's opinion impacted the ALJ's ultimate RFC finding.

### 4.5. Subjective Symptoms

In a section headed "The ALJ Erred in Evaluating Jozefyk's Subjective Symptoms," Jozefyk recites the general principles set forth under SSR 16-3p and then proceeds to state various criticisms of the ALJ's decision. (ECF No. 16 at 20-22.) In doing so, he generally fails to connect these observations to any legal argument or basis for relief. For example, Jozefyk observes, "The ALJ states that there was reported minimal improvement in

17
Case 1:19-cv-01606-WED   Filed 10/02/20   Page 17 of 20   Document 23

physical therapy despite the records reflecting improvement. (R. 25). Yet the record reflects some range of motion improvement but no significant change in function since the start of care. (R. 1247)." (ECF No. 16 at 21.)

As a preliminary matter Jozefyk's characterization of the evidence does not appear inconsistent with the ALJ's conclusion. But, more materially, he does not explain how this fact suggests that the ALJ erred under SSR 16-3p. Another example of Jozefyk failing to develop an argument is when he contends, "as stated *supra*, Jozefyk contests the ALJ's analysis as to the ALJ's handling of his migraines. (R. 26)." (ECF No. 16 at 22.) Although Jozefyk did argue in other places in his brief that the ALJ erred in his analysis of Jozefyk's migraines, nowhere did Jozefyk develop any argument that the ALJ failed to comply with SSR 16-3p in his assessment of Jozefyk's migraines.

Only one argument in this section of Jozefyk's brief is sufficiently developed to merit analysis. He states, "The ALJ finds that many records did not support deficits to the left hand absent a neurologist finding weakness to his hands. (R. 25)." (ECF No. 16 at 21.) But, according to Jozefyk, "Dr. Liao also referenced abnormality to the hands earlier in the records including a positive Tinel's sign. (R. 685, 1001- 01). Dr. Hayes limited Jozefyk to occasional handling and fingering supported to the left hand. (R. 825)." (ECF No. 16 at 21.) He argues, "The ALJ fails to explain how his lay analysis of the evidence supports 'frequent' bilateral reaching and handling which requires use of the hands from 1/3 to 2/3

of a workday. SSR 83-10. This is particularly the case as the record intermittently does note he reports problems dropping items. (R. 80, 826, 835, 857-59)." (ECF No. 16 at 22.)

With respect to Jozefyk's ability to use his hands, the ALJ stated:

> in April 2017, he complained of weakness in his hands, particularly his left hand where he reported loss of his fine motor control. (Ex. Bl4F, pg. 7). Although most physical examinations failed to confirm these abnormalities, a treatment note from January 2018 states that the claimant had paresthesias affecting his left hand with positive Tinel sign over the left wrist. (Ex. Bl4F, pg. 9; Ex. B23F, pg. 7). This provider recommended additional testing and gave the claimant a left wrist splint to use. (Ex. B23F, pg. 7-8). Although the claimant had limited treatment for hand weakness and/or numbness, given his subjective complaints and the notes from the above mentioned examination, the undersigned found that the claimant could only perform frequent bilateral reaching and handling.

(Tr. 25.) Thus, the ALJ explicitly noticed the positive Tinel's sign.

As for Dr. Hayes's opinion that Jozefyk was limited to occasional fine and gross manipulation with his left hand (Tr. 825), as discussed above the ALJ provided good reasons for his decision to discount Dr. Hayes's opinion. Having reasonably discounted Dr. Hayes's opinion, it was not error for the ALJ to decline to credit his opinion regarding Jozefyk's ability to use his left hand.

Although there was evidence that Jozefyk's ability to use his left hand was more limited than the ALJ found (*see* ECF No. 16 at 22 (citing Tr. 80, 826, 835, 857-59)), there was nonetheless substantial evidence to support the ALJ's conclusion. The fact that the ALJ did not discuss every piece of evidence favorable to Jozefyk is not a basis for remand. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

## 5. Conclusion

Jozefyk's criticisms of the ALJ's decision are insufficient to sustain his burden to demonstrate that the ALJ's decision was unsupported by substantial evidence or based on an error of law. The fact that some evidence supports a finding that Jozefyk was more limited than the ALJ found or that the ALJ failed to explicitly discuss all evidence favorable to Jozefyk does not mean that the ALJ erred. In large part Jozefyk's arguments are perfunctory and undeveloped and thus forfeited. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Martinez v. Colvin*, No. 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, at *26 (N.D. Ill. Mar. 28, 2014). "It is not for this Court to develop Plaintiff's arguments or comb through the record to find support." *Mark S. v. Saul*, No. 18 CV 50276, 2020 U.S. Dist. LEXIS 37143, at *5 (N.D. Ill. Mar. 4, 2020) (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010)).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of October, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge